Dawson v. Brown   Yeah, thank you. Yeah, mister Wilson, mm. Okay. May it please the court counsel. My name is Brad Wilson, and I represent the plaintiff appellant in this case, George Dawson. Now, on December 14th, 2011, the plaintiff was arrested by two Springfield police officers, Michael Brown and Chance Warnisher for allegedly committing the crime of resisting arrest and obstructing the officers as they attempted to arrest the plaintiff's son, Greg Dawson. Mr Dawson was never formally charged with those crimes. During the course of that arrest, Mr Dawson, the plaintiff, was tackled from behind by Officer Michael Brown. As a result of that action, the plaintiff, a 72 year old man, suffered severe and numerous injuries. Plaintiff then filed a civil rights suit against Officers Brown and Warnisher. He also named Officer Steve Sturmell as a defendant. Officer Sturmell at that time was employed as a police officer by the village of Jerome, Illinois. All three defendants moved for summary judgment and was granted summary judgment by the district court. The plaintiff is now appealing that portion of the district court's order, which granted summary judgment in favor of Michael Brown. It's well known that when considering Officer Brown's motion for summary judgment, or well established, it's well known that when considering a motion for summary judgment, the court should not grant such a motion if there are disputed issues of material fact. Also, in considering the motion, the district court must construe the evidence in the light most favorable to the non-moving. Unfortunately, the district court failed to do that in this case. Contained in the record is the deposition testimony given by a plaintiff, as well as the deposition testimony of Officers Brown, Warnisher, and Sturmell. During their respective depositions, each of those witnesses gave their account of the events which preceded Officer Brown's use of force against the plaintiff. Put simply, each of those four witnesses gave a different account of the events which led Officer Brown to decide to tackle the plaintiff from behind and drive him face first into a cement driveway. Now, the officer who kicked Dawson was granted summary judgment, and you didn't appeal. Are you saying that the kick was reasonable as a matter of law, but the tackle was not? The evidence shows, and the plaintiff conceded, that when he saw, when the arrest took place in the plaintiff's driveway, the plaintiff testified that he came around from the front of the house where he'd been attempting to help the officers after he heard a commotion, he saw Officer Warnisher tasing his son once. Plaintiff then says he approached plaintiff with his hands up, said, please don't kill him. When he got within three to four feet, Officer Warnisher kicked him. I think under the Graham factors, we have conceded that that use of force may have been reasonable because Officer Warnisher could have reasonably construed, or believed, that plaintiff was going to attempt to interfere with the arrest of his son. But that's not the factual scenario which presented itself to Officer Brown. Again, in granting summary judgment to Officer Brown, the district court found that it was reasonable for Officer Brown to also mistakenly believe that plaintiff was going to attempt to interfere in the arrest of his son. And as a result, the district court said, I'm unable to find that that use of force was unreasonable. Is there any evidence that Brown knew that Dawson had been calm and helpful, even calling his son's cell phone to try to help locate him? Yes, Officer Brown is in the front yard. Officer Brown was in the vicinity when Officer, I believe, Warnisher and a county officer, Deputy Drew Dickinson, were speaking with plaintiff. And I think there's a reasonable inference that he was there. We have videotaped from the officer's car, which shows plaintiff walking, talking on a cell phone. And shortly thereafter, you see Officer Brown enter the picture. So I think there's a reasonable inference that Officer Brown was aware that plaintiff had attempted to help the officers locate his son. Now, going back to the district court's opinion, the district court made three factual determinations, which it believes supported its conclusion that it was reasonable for Officer Brown to believe that plaintiff was going to attempt to interfere in the arrest of his son. First, the district court said that Officer Brown saw plaintiff approaching Officer Warnisher from behind. Second, the district court found that not only did Officer Brown see plaintiff approaching Officer Warnisher from behind, but he saw plaintiff reach towards Officer Warnisher. Finally, the district court found that Officer Brown heard plaintiff say as plaintiff was approaching Officer Warnisher, that's my son, don't kill him. Simply put, the court could have made none of those factual determinations without improperly resolving disputed issues of material fact. At the very least, your honors, it's clear that the district court did not construe the evidence in the light most favorable to the plaintiff. Simply put, when looked at the light most favorable to the plaintiff, when you look at the deposition testimony of Officer Brown, Officer Warnisher, and the plaintiff, it's reasonable to conclude that plaintiff had approached Officer Warnisher with his hands up, and said, please don't kill him, as plaintiff testified to. Officer Warnisher testified that he then kicked plaintiff, causing plaintiff to stumble backwards several feet. Plaintiff testified that after his kick, he did not fall down, but he resumed an upright position and immediately was tackled from behind by Officer Brown. But it's significant, Officer Brown testified and admitted that he was not present in the driveway yet when Warnisher kicked the plaintiff. Does not know what occurred before Warnisher kicked the plaintiff. So in light of that, Officer Brown, if you look at that testimony, did not see plaintiff approach Officer Warnisher, did not see Officer Warnisher kick plaintiff. In other words- How about this scenario, though? Yes, sir. Undisputed that Warnisher and maybe Stermel are engaged with Greg Dawson at the time of the kick, right? No, I'm sorry, even that's disputed. If you look at Officer Stermel's testimony, he testified that he was basically- I don't care whether it's one or two. I don't care whether it's one officer or two, but at least Warnisher is engaged with Dawson. Yes. Trying to subdue him, he's not compliant, correct? Yes, sir. Okay. That's Greg Dawson, the son. Right, Greg Dawson, yeah. And would you agree with me that an officer in that situation is in a very dangerous position? When as plaintiff is approaching the officer? Exposed to the danger that somebody else may interfere. Yes, and that's why we are not challenging the grant of summary judgment in favor of Officer Warnisher. But I would contend that the evidence shows then that that danger was alleviated when Warnisher kicked plaintiff. A 72-year-old man who stumbled back- Three feet in a split second, right? Immediately. This happens so fast, even according to your client, it looks to me like it's all one effort to ensure that the older Mr. Dawson was not going to interfere with Warnisher, who is exposed to a very dangerous threat. I think that, with all due respect, that that scenario which you're putting out there is based upon a resolution of disputed issues of fact because- Which ones? Okay, because Officer Brown's testimony is, he came around the corner of the neighbor's front yard, he heard unintelligible yelling, he did not, was unable to make out any specific statements, just heard yelling. Now, cobble that together, put that together with Officer Warnisher's testimony, I kicked plaintiff, plaintiff fell back several feet, plaintiff then got up, and again, Brown didn't see the kick. Brown didn't hear Officer Warnisher say, get back. Under that interpretation of the numerous versions of what went on, what Brown would have saw as he rounded the corner was Sturmell and Warnisher wrestling with Greg Dawson on the ground and plaintiff several feet away, six to seven feet away, in the process of standing back up. And on the basis of the mere fact that plaintiff is standing within six to seven feet of where two other officers are attempting to arrest his son, plaintiff decides to tackle a 72-year-old man and drive him face first. Why do you keep emphasizing he's 72 years old? You think that's old? No, sir, I don't. You better not, you better be careful how you answer that one. No, sir, but I think that human experience may say that a 72-year-old man would not move quickly, and that... You're right. And so... Interesting observation. I think when Officer Brown comes around the corner and sees a 70, well, sees an elderly man, man, he's already been told plaintiff's age, standing six to seven feet away, at that point, doing nothing more than standing up, I don't think that justifies tackling. That would open the door to any witness to a police arrest being tackled from behind, simply because the officer's trying to make his way to assess the other officers. Also, there were several other officers in the area. There was Deputy Dickinson, there was a Rhett Spaniel. Nobody closer to Greg Dawson, though. No, sir, but there was available backup. All right, thank you. Thank you. Mr. Ron. May it please the court, counsel. My name is Steve Ron. It's my privilege, along with my colleague Gwen Drake, to have represented and represent Officer Warnacher and Officer Brown in this case. A snap of a finger. That is exactly how Mr. Dawson, the plaintiff, described and demonstrated the time between he was kicked and the time until he was tackled. It was an instant. It wasn't two separate situations. It was all a flowing circumstances. Now, plaintiff's actual testimony does paint a reality that's substantially different than the light most favorable to the plaintiff that counsel advocates. He suggests that there were two independent events. He was interfering with Warnacher's attempt to arrest. Warnacher kicked him away. Then we're to believe that he withdrew from the action. That Mr. Brown, Officer Brown, came upon a scene where two officers are struggling with a subject. Mr. Dawson is just docilely standing eight feet away. What Mr. Officer Brown chooses to do is not to help his colleague struggle. He says, I think I'm going to go tackle this guy who's standing there minding his own business. Well, you say in your brief that, quote, once kicked, the plaintiff approached the officers again and attempted to intervene a second time. End quote. You also say that Brown, quote, pushed, not tackled him to the ground. That's in your brief. Isn't that inconsistent with what you just said? I am suggesting that even if you accept the version that the plaintiff has set forth, that it's still objectively reasonable. Whether it's push, whether it's tackle, whether he's approaching. If you take the plaintiff's words, we look to the plaintiff after he was kicked. On page 72 of his deposition, he says, and I quote, I snapped right back. I didn't go down. That pissed the guy off behind me, and they tackled me to the ground. This is not the language of a guy who was withdrawn. He snapped right back. Instantaneously, he was tackled. This is what Mr. Brown, Officer Brown, came upon. He came upon and he testified that he saw Mr. Dawson grabbing towards Warnershire. Now, he may not have seen the kick. He didn't see the kick. He may have been blocked by Mr. Dawson himself. But he came upon a scene where a verbal warning had already not worked. Where a kick had already not worked. He snapped right back after that. Under the circumstances, his attempt in the split second that he had to react to prevent and to remove the plaintiff from the potential of interfering, grabbing somebody's, one of the officer's guns, anything. A 72-year-old man with a gun is just as deadly as a 36-year-old man. Probably even more deadly. I mean, he gets mean at that age. I would suggest that under those circumstances where he came across the scene and had a split second to react, that removing Mr. Dawson, preventing him, disabling him from interfering could look a lot like a tackle. And under the Graham circumstances, that was reasonably objective. Now, what are we to make of these various comments that were made about Mr. Dawson by the various officers within the hour? I would suggest, Your Honor, that while they are certainly unseemly, they are irrelevant to what happened 15, 20 minutes earlier. You have a situation where officers who have just gotten through a chase, their adrenaline is still high, they're still pumped up, and they're going to say something. Had Mr. Brown said something to the effect of, yes, I hate that plaintiff, I always have, and I was looking for an excuse to tackle him, that would be certainly relevant. But to suggest that they were sitting there saying, yeah, I ended up tackling an older guy, is an acceptance of reality. And yes, it's unseemly to hear in the after effect, but under the circumstances, he was required to extract the elder Dawson from interfering with the lawful arrest of his son. He had a split second within which to remove the elder Dawson from that situation as he ran up and encountered it. He did so by pushing Mr. Dawson away and ended up, in Mr. Dawson's view, as a tackle. I would suggest that that tackle was objectively reasonable under the circumstances. No more questions? You can have one minute. Thank you, Your Honor. Again, I would just emphasize, Officer Brown testified that he did not see the kick or any of the actions that preceded Officer Wernicke's kicking plaintiff. He was unaware that all that had transpired. So you're saying the split second is not the delight most favorable to your client? But it's your own client's testimony. But it's your client's testimony. Well, that is my client's testimony, but I also think you have to, if you look at the other testimony, it shows that it took longer. Officer Wernicke. Your case then requires mixing and matching, in essence. And for the purpose of summary judgment, you look at the light most favorable? In a trial, you're going to have to say, my client's wrong about some of these things. And let the jury decide, which is what we're here for today. We need to let the jury decide what happened. And as regards to the comments, there is a testimony, there's evidence in the record, which shows that before any of this occurred, Officer Sturmell, who'd had a previous encounter with the plaintiff, told the other officers, do you know the father? He's a fucking asshole. And was Brown present? There is enough, there's reasonable inference. They were in the front yard in close proximity. Brown did deny that he heard that. All right. Thank you. Thank you both. The case will be taken under advisement.